1
2
3
4
5
6
7

<div align="center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

</div>

8
9
10
11

12
13
14
15
16
17

| | |
|---|---|
| ALEJANDRO FERNANDEZ TINTO PESQUERA, S.L, et al., <br><br>        Plaintiffs, <br><br>    v. <br><br> ALEJANDRO FERNANDEZ PEREZ, et al., <br><br>        Defendants. | Case No. 20-CV-02128-LHK <br><br> **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** <br><br> Re: Dkt. No. 35 |

18
19
20
21
22
23
24

Plaintiffs Alejandro Fernandez Tinto Pesquera, S.L. ("AFTP") and Folio Wine Company, LLC ("Folio") (collectively, "Plaintiffs") sue Defendants Alejandro Fernandez Perez ("Fernandez") and individuals whose identities are unknown to Plaintiffs. Before the Court is specially appearing Defendant Fernandez's motion to dismiss Plaintiffs' First Amended Complaint.[1] Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Fernandez's motion to dismiss with prejudice.

25
26
27
28

---

[1] Fernandez's motion to dismiss contains a notice of motion paginated separately from the points and authorities in support of the motion. ECF No. 35 at i–ii. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

<div align="center">1</div>

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

## I.  BACKGROUND

This case stems from a dispute among members of a Spanish wine-producing family about who owns the U.S. trademark ("the PESQUERA Mark") that was used on the family's wine. The Court discusses in turn: (1) the formation of Plaintiff AFTP; (2) the separation of AFTP's shareholders and subsequent Spanish legal proceedings; (3) Fernandez's subsequent efforts to sell wine in the United States; and (4) the procedural history of the instant case.

### A.  The Formation of AFTP

Defendant Fernandez, the patriarch of the family, is an 87-year-old citizen of Spain who has resided in Spain throughout his life. ECF No. 34 ("FAC") ¶ 4. In 1971, Fernandez married Emelia Rivera-Rueda ("Rivera"). *Id.* ¶ 16. Fernandez and Rivera have four daughters. *Id.* ¶ 15. All six Fernandez-Rivera family members reside in Spain.

Since the 1970s, Fernandez and Rivera have produced wines from the Ribera Del Duero region of Spain under the brand name and mark "Tinto Pesquera." *Id.* ¶ 16. In 1985, Fernandez and Rivera began exporting wine from Spain into the United States. *Id.* ¶ 18. On October 10, 1989, Fernandez registered the PESQUERA Mark, U.S. TM Reg. No. 1,560,091, with the United States Patent and Trademark Office ("U.S. PTO") under his name. *Id.* ¶ 19. Plaintiffs allege that Fernandez filed the registration "on behalf of the family-operated Tinto Pesquera wine business." *Id.*

On April 19, 1990, Fernandez, Rivera, and their four daughters established Plaintiff AFTP. *Id.* ¶¶ 15,  21. Fernandez owns 49.72% of AFTP's shares, Rivera owns 49.72%, and each of their four daughters owns 0.14%. *Id.* ¶ 15.

Plaintiffs allege that Fernandez and Rivera "assigned the entirety of the prior wine business Tinto Pesquera to AFTP, which included all common law trademark rights." *Id.* ¶ 21. According to Plaintiffs, under AFTP's Articles of Incorporation, Fernandez and Rivera "transferred the Tinto Pesquera business to the new entity. . . 'in such a way that they cease[d] in the ownership and exercise of the same, which passes in block to the society." *Id.* Plaintiffs allege that "all of the joint assets and community property of the pre-existing business owned by Fernandez and Rivera

2

1   were transferred to [AFTP], which . . . naturally included all intellectual property, including the

2   PESQUERA mark and . . . registrations for the mark, including the U.S. Pesquera Registration."

3   *Id.*

4       On the other hand, Fernandez alleges that AFTP's Articles of Incorporation list the specific

5   assets each individual contributed to the company at formation. Fernandez Decl. ¶ 7. According to

6   Fernandez, that list does not include the PESQUERA Mark as being contributed to AFTP. *Id.*;

7   Diez Decl. ¶ 14.

8       Furthermore, AFTP's Articles of Incorporation state that "[a]ny [i]ssues, discrepancies or

9   matters which may result as regards the interpretation or application of [AFTP's Articles of

10  Incorporation] . . . shall be submitted to arbitration" in Spain. Fernandez Decl. ¶ 9, Exh. 2 at 028,

11  art. 37; Diez Decl. ¶ 16.

12      On April 26, 1990, the Spanish trademark office registered the PESQUERA Mark in

13  Fernandez's name. Fernandez Decl. ¶ 11, Exh. 3. Fernandez alleges that, from 1990 to 2018,

14  AFTP was permitted to use the PESQUERA Mark through a license issued by Fernandez.

15  Fernandez Decl. ¶ 13. In 2006, AFTP and Fernandez put these licenses in a public deed and

16  registered the deed with the Spanish trademark office. Fernandez Decl. ¶ 13, Exh. 4.

17      From 1990 to 2017, Fernandez served as the manager of AFTP. FAC ¶ 22. Classical Wines

18  from Spain, Ltd. ("Classical Wines") was a U.S. importer of AFTP's PESQUERA wine. *Id.* ¶ 32.

19  In 2017, Plaintiff Folio, a California limited liability company with its principal place of business

20  in Napa, California, became the exclusive U.S. importer of AFTP's PESQUERA wine. *Id.* ¶¶ 3,

21  29.

22      **B.  The Separation of AFTP's Shareholders**

23      In 2017, Fernandez and Rivera filed for divorce in Spain. FAC ¶ 26. In July 2018, Rivera

24  and the couple's three oldest daughters fired Fernandez as manager of AFTP. *Id.*; Fernandez Decl.

25  ¶ 14. Subsequently, Fernandez and the couple's youngest daughter started their own wine

26  business. FAC ¶ 26.

27

28

3

1    Fernandez alleges that, in November 2018, Fernandez revoked the license he had granted to

2    AFTP for the PESQUERA Mark. Fernandez Decl. ¶ 15. In September 2019, the revocation was

3    registered by the Spanish trademark office. *Id.*, Exh. 5.

4    Following the removal of Fernandez as manager of AFTP, four Spanish legal proceedings

5    have been filed. First, in December 2018, Fernandez filed an action in a Valladolid Court seeking

6    damages and an injunction preventing AFTP from using his name and image. Fernandez Decl. ¶

7    18; Diez Decl. ¶ 17. In June 2019, the Valladolid Court found in Fernandez's favor and enjoined

8    AFTP from using his name and image. Fernandez Decl. ¶ 18, Exh. 7; Diez Decl. ¶ 17.

9    Second, in July 2019, Fernandez filed a lawsuit against AFTP in Madrid's commercial court

10   for damages, a declaration of trademark infringement, and an injunction enjoining AFTP from

11   using his trademarks. FAC ¶ 27; Fernandez Decl. ¶ 19, Exh. 8; Diez Decl. ¶ 18. In January 2020,

12   AFTP asserted counterclaims against Fernandez, which includes the same relief AFTP is seeking

13   in the instant case. Fernandez Decl. ¶ 19, Exh. 9, at 288 (alleging that "the Spanish trademarks . . .

14   along with the United States trademark 'PESQUERA' (no. 1560091), *inter alia*, were the property

15   of the matrimonial joint-property enterprise composed of Mr. Alejandro Fernandez Perez and Mrs.

16   Emilia Rivera Rueda"); Diez Decl. ¶ 19. Specifically, AFTP seeks a declaration that Fernandez

17   assigned the PESQUERA Mark to AFTP in 1990, such that AFTP owns the trademark and

18   Fernandez cannot use it. *Id*. In March 2020, the Madrid court denied Fernandez's motion for a

19   preliminary injunction. FAC ¶ 27. This proceeding remains ongoing. Fernandez Decl. ¶ 19.

20   Third, in January 2020, Fernandez and the couple's youngest daughter initiated an

21   arbitration in Valladolid, seeking damages for fraud, embezzlement, and corporate

22   mismanagement. Fernandez Decl. ¶ 20, Exh. 11; Diez Decl. ¶ 21. This proceeding remains

23   ongoing. Fernandez Decl. ¶ 20.

24   Fourth, in November 2018, Fernandez alerted the Valladolid Attorney General's office to a

25   potential fraud after Fernandez discovered a February 2018 agreement leasing land owned by

26   Rivera and Fernandez to AFTP. Fernandez Decl. ¶ 21; Diez Decl. ¶ 22. Rivera had allegedly

27

28
Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

4

1    signed the lease in her own name and on Fernandez's behalf despite the fact that they were

2    separated. *Id*. In March 2019, the Valladolid Attorney General's office brought charges for fraud.

3    Fernandez Decl. ¶ 22, Exh. 11; Diez Decl. ¶ 22. This proceeding remains ongoing. Fernandez

4    Decl. ¶ 22.

5        **C.  Fernandez's Subsequent Venture**

6        Following the removal of Fernandez as manager of AFTP, Fernandez and the couple's

7    youngest daughter started their own wine business. FAC ¶ 26. On June 18, 2019, Classical Wines,

8    AFTP's former importer, submitted a Certificate of Label Approval to the U.S. Alcohol and

9    Tobacco Tax and Trade Bureau to import a PESQUERA wine that Fernandez had made. *Id*. ¶ 32.

10   The label submitted states that the wine is prepared "for Alejandro Fernandez," and Classical

11   Wines is the "Sole U.S. Agent[]" for the wine. Passarelli Decl. ¶ 10.

12       On November 15, 2019, Fernandez allegedly sent a cease and desist letter to Folio's CEO,

13   Paolo Battegazzore, in Napa, California. FAC ¶ 30; Battegazzore Decl. ¶ 6. The letter claimed that

14   Fernandez was the owner of the PESQUERA Mark, accused AFTP and Folio of infringing the

15   PESQUERA Mark, and demanded that Folio cease importing AFTP's PESQUERA wine. *Id*. On

16   November 24, 2019, Fernandez's counsel in Spain allegedly sent another cease and desist letter to

17   Folio's CEO. Battegazzore Decl. ¶ 7, Exh. C.

18       Plaintiffs allege that, on February 21, 2020, AFTP received a confirmation slip from a

19   shipping company, which confirmed that it would be shipping 224 cases of AFTP wine to the U.S.

20   FAC ¶ 49. AFTP did not order this shipment, and Classical was listed as the importer. *Id*.

21   According to Plaintiffs, this information suggests that Fernandez was shipping his wine into the

22   United States, and the shipping company accidentally sent the confirmation to AFTP, not

23   Fernandez.

24       Plaintiffs allege that, on February 24, 2020, Folio received an email from a Florida wine

25   distributor announcing that Fernandez was releasing PESQUERA wine. FAC ¶ 33; Battegazzore

26   Decl. ¶ 9, Exh. E. Plaintiffs allege that Fernandez has since contacted state alcohol beverage

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   regulatory agencies and informed them that Folio is no longer the importer of PESQUERA wine.

2   FAC ¶ 80; Battegazzore Decl. ¶ 10.

3        Plaintiffs allege that Classical has advertised Fernandez's PESQUERA wine to U.S.

4   distributors. FAC ¶ 42. Plaintiffs further allege that Fernandez or Classical have already contacted

5   state agencies to advise them that Folio is not the authorized supplier of PESQUERA wine. *Id.* ¶

6   43. For example, in March of 2020, Fernandez had told the Ohio Division of Liquor Control that

7   Folio was not the authorized supplier of PESQUERA wine. *Id.* ¶ 36; Battegazzore Decl. ¶ 10, Exh.

8   F. As a result, the Ohio Division of Liquor Control notified Folio it was no longer authorized to

9   sell PESQUERA wine in Ohio. *Id.*

10       Finally, Plaintiffs allege that Fernandez has imported and distributed wines throughout the

11  U.S. and in California. *Id.* ¶¶ 44–45. Plaintiffs allege that Fernandez's wine bears counterfeit and

12  confusingly similar imitations of the AFTP trademarks, the AFTP trade name, and the AFTP trade

13  dress, such that Fernandez's wine and AFTP's wine are likely to be confused. *Id.* ¶¶ 46, 47.

14       **D.  Procedural History**

15       On March 27, 2020, Plaintiffs filed a complaint against Fernandez, Classical Wines, and

16  individuals whose identities are unknown to Plaintiffs. ECF No. 1. On April 8, 2020, Plaintiffs

17  served Fernandez by mailing a copy of the Complaint, Summons, and other documents to the

18  domestic representative for the PESQUERA Mark. ECF No. 13. On May 1, 2020, Plaintiffs

19  voluntarily dismissed Classical Wines from the lawsuit. ECF No. 14.

20       On August 14, 2020, Fernandez filed a motion to dismiss the complaint, or, in the

21  alternative, to stay the case. ECF No. 26. On August 28, 2020, Plaintiffs filed an opposition to the

22  motion. ECF No. 31. On September 4, 2020, Fernandez filed a reply. ECF No. 32. On September

23  8, 2020, Plaintiffs filed a First Amended Complaint. FAC. Accordingly, the Court denied

24  Fernandez's August 14, 2020 motion as moot. ECF No. 39.

25       The First Amended Complaint alleges that Fernandez is infringing the PESQUERA Mark.

26  Specifically, the First Amended Complaint asserts eleven causes of action: (1) trademark, trade

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    dress, and trade name infringement; (2) use of a counterfeit mark in violation of 15 U.S.C. §§

2    1114(1)(a) and 1117(b); (3) federal unfair competition in violation of 15 U.S.C. § 1125(a); (4)

3    common law unfair competition; (5) intentional interference with contractual relations; (6) libel in

4    violation of Cal. Civ. Code §§ 45 and 45a; (7) unfair business practices in violation of Cal. Bus. &

5    Prof. Code § 17200 *et seq.*; (6) transfer of U.S. TM Reg. No. 1,560,091; (9) inequitable conduct

6    before the U.S. PTO; (10) constructive trust and assignment of U.S. TM Reg. No. 1,560,091; and

7    (11) declaratory relief. FAC ¶¶ 57–120.

8         On September 22, 2020, Fernandez filed the instant motion to dismiss the First Amended

9    Complaint, or, in the alternative, to stay the case. ECF No. 35 ("Mot.").[2] On October 6, 2020,

10   Plaintiffs filed an opposition to the instant motion. ECF No. 37 ("Opp'n."). On October 13, 2020,

11   Fernandez filed a reply. ECF No. 38 ("Reply").

12   **II.  LEGAL STANDARD**

13        **A.  Motion to Dismiss Under Rule 12(b)(2)**

14         In a motion challenging personal jurisdiction under Federal Rule of Civil Procedure

15   12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the

16   burden of establishing that jurisdiction exists. *See In re Boon Global Ltd.*, 923 F.3d 643, 650 (9th

17   Cir. 2019). "Where, as here, the defendant's motion is based on written materials rather than an

18   evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to

19

20   [2] Fernandez also filed a request for judicial notice of the PESQUERA Mark, on file with the U.S.
     PTO, Registration No. 1,560,091. ECF No. 36. The Court may take judicial notice of matters that
21   are either "generally known within the trial court's territorial jurisdiction" or "can be accurately
     and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R.
22   Evid. 201(b). Public records are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*,
     482 F.3d 1035, 1041 (9th Cir. 2007). However, to the extent any facts in documents subject to
23   judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those
     facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other*
24   *grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Records of the
     PTO are proper subjects of judicial notice. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, No.
25   19-cv-03716-JSW, 2020 WL 1694361, at *3 (N.D. Cal. Apr. 7, 2020) ("Materials in the online
     files of the USPTO and other matters of public record are proper subjects of judicial notice.").
26   Thus, the Court grants Fernandez's request.

27                                                                      7

28   Case No. 20-CV-02128-LHK
     ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   withstand the motion to dismiss.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015)

2   (quoting *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011)).

3        However, this standard "is not toothless," and the party asserting jurisdiction "cannot

4   simply rest on the bare allegations of its complaint." *In re Boon Global Ltd.*, 923 F.3d at 650

5   (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Thus,

6   courts may consider declarations and other evidence outside the pleadings to determine whether it

7   has personal jurisdiction. *See id.* At this stage of the proceeding, "uncontroverted allegations in

8   plaintiff's complaint must be taken as true, and '[c]onflicts between parties over statements

9   contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (quoting *Schwarzenegger*,

10  374 F.3d at 800). On the other hand, courts "may not assume the truth of allegations in a pleading

11  which are contradicted by affidavit." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

12  1223 (9th Cir. 2011).

13       **B. Motion to Dismiss for Forum Non Conveniens**

14       Whether to dismiss an action for forum non conveniens is a decision "committed to the

15  sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). "A

16  party moving to dismiss based on forum non conveniens bears the burden of showing (1) that

17  there is an adequate alternative forum, and (2) that the balance of private and public interest

18  factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002)

19  (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142-43 (9th Cir. 2001)). The Ninth Circuit has

20  recognized that "the standard to be applied to a motion for dismissal on the ground of forum non

21  conveniens is whether . . . defendants have made a clear showing of facts which . . . establish such

22  oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which

23  may be shown to be slight or nonexistent." *Id.* (quoting *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410

24  (9th Cir. 1983)) (internal brackets omitted). "Forum non conveniens is 'an exceptional tool to be

25  employed sparingly, not a . . . doctrine that compels plaintiffs to choose the optimal forum for

26  their claim.'" *Id.* (internal brackets omitted) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1   (9th Cir. 2000)).

2   **C.  Motion to Dismiss Under Rule 12(b)(6)**

3   Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short

4   and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

5   A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

6   Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief

7   that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim

8   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

9   reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

10  U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it

11  asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal

12  quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s]

13  factual allegations in the complaint as true and construe[s] the pleadings in the light most

14  favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025,

15  1031 (9th Cir. 2008).

16  The Court, however, need not accept as true allegations contradicted by judicially

17  noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look

18  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

19  motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

20  1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in

21  the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

22  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere

23  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

24  dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

25  **D.  Leave to Amend**

26  If the Court determines that a complaint should be dismissed, it must then decide whether

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1  to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

2  "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule

3  15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v.*

4  *Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks

5  omitted). When dismissing a complaint for failure to state a claim, "a district court should grant

6  leave to amend even if no request to amend the pleading was made, unless it determines that the

7  pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal

8  quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

9  amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

10  moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

11  (9th Cir. 2008).

12  **III. DISCUSSION**

13    Fernandez argues that the case should be dismissed based on: (1) lack of personal

14  jurisdiction under Rule 12(b)(2); (2) forum non conveniens; and (3) failure to state a claim under

15  Rule 12(b)(6). Mot. at 7–25. If the Court denies dismissal, Fernandez seeks a stay pending the

16  resolution of the ongoing Spanish proceedings in the alternative. Mot. at 25.

17    The Court initially analyzes Fernandez's threshold arguments for dismissal and determines

18  that the instant case should be dismissed for lack of personal jurisdiction and for forum non

19  conveniens. The Court acknowledges that either lack of personal jurisdiction or forum non

20  conveniens are sufficient to dismiss the instant case.[3] The Court denies leave to amend because a

21

22    [3] In *Sinochem*, the United States Supreme Court held that a district court may address a motion to
dismiss for forum non conveniens before reaching the question of subject matter jurisdiction when

23  considerations of "convenience, fairness, and judicial economy so warrant." *Sinochem*, 549 U.S. at
432. However, the United States Supreme Court has stated that "[i]n the mine run of cases," a

24  district court "can readily determine that it lacks jurisdiction over the cause or the defendant," in
which the case "the proper course would be to dismiss on that ground." *Id.* at 436. Accordingly,

25  when jurisdiction "'will involve no arduous inquiry,'" the court should address jurisdiction first.
*Id.* (quoting *Ruhrgas*, 526 U.S. at 587-88). It is only "where subject-matter or personal jurisdiction

26  is difficult to determine, and forum non conveniens considerations weigh heavily in favor of
dismissal," that "the court properly takes the less burdensome course" by dismissing on forum non

27  conveniens grounds without reaching the threshold question of jurisdiction. *Id.* Because personal

28  Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

10

second amended complaint would be subject to dismissal on the same two grounds and granting

leave to amend would result in undue delay and prejudice Fernandez. Because the Court dismisses

the instant case based on lack of personal jurisdiction and forum non conveniens, the Court need

not reach Fernandez's arguments that the First Amended Complaint fails to state a claim or that

the instant case should be stayed pending resolution of the ongoing Spanish proceedings.

### A.  . Personal Jurisdiction

In the instant case, Plaintiffs assert that Fernandez is subject to personal jurisdiction under

the federal long-arm statute, Fed. R. Civ. P. 4(k)(2). Opp'n at 5. A plaintiff arguing that a

defendant is subject to personal jurisdiction under Rule 4(k)(2) must establish three elements:

"First, the claim against the defendant must arise under federal law. Second, the defendant must

not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the

federal court's exercise of personal jurisdiction must comport with due process." *Pebble Beach*

*Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). The Court examines each of these factors in

turn.

### 1.  Whether Plaintiffs' Claims Arise Under Federal Law

First, Plaintiffs' claims arise under federal law. Indeed, federal law is the basis of several of

Plaintiffs' claims, including trademark, trade dress, and trade name infringement; use of a

counterfeit mark in violation of 15 U.S.C. §§ 1114(1)(a) and 1117(b); federal unfair competition

in violation of 15 U.S.C. § 1125(a); transfer of  U.S. TM Reg. No. 1,560,091; inequitable conduct

before the U.S. PTO; and constructive trust and assignment of U.S. TM Reg. No. 1,560,091. FAC

¶¶ 52–69, 94–115. Although some of Plaintiffs' claims arise under state law, the Court can

exercise pendent personal jurisdiction over the state law claims because they arise out of a

common nucleus of operative facts with the federal claims. *See Apollo Education Grp. v. Somani*,

Case No. C-15-1056 EMC, 2015 WL 4880646, at *2 (concluding that the first Rule 4(k)(1)

---

jurisdiction is not especially difficult to determine in the instant case, the Court starts with
personal jurisdiction.

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    requirement was met when claims arose under the federal Lanham Act and the California Unfair

2    Competition Law because the court could exercise pendent personal jurisdiction). Thus, the first

3    requirement of Rule 4(k)(2) is satisfied.

### 2.   Whether Defendant is Subject to the Personal Jurisdiction of Any State Court of General Jurisdiction

Second, Fernandez is not subject to the personal jurisdiction of any state court of general

jurisdiction. "[A]bsent any statement from [Fernandez] that [he] is subject to the courts of general

jurisdiction in another state, the second requirement of Rule 4(k)(2) is met." *Holland America*

*Line, Inc. v. Wartsila N. America, Inc.*, 485 F.3d 450, 462 (9th Cir. 2007). In the instant case,

Fernandez is a citizen and resident of Spain. FAC ¶ 4. Moreover, Fernandez never states that he is

subject to personal jurisdiction in any other state. Accordingly, the second requirement of Rule

4(k)(2) is met.

### 3.   Whether the Exercise of Personal Jurisdiction Comports with Due Process

Because Plaintiffs have established the first two requirements of Rule 4(k)(2), the Court

proceeds to consider whether the exercise of personal jurisdiction over Fernandez comports with

due process. *Pebble Beach Co.*, 453 F.3d at 1159. The analysis of the third Rule 4(k)(2)

requirement "is nearly identical to traditional personal jurisdiction analysis," but instead of

considering the defendant's contacts with the forum state, the court looks at the defendant's

"contacts with the nation as a whole." *Holland America Line, Inc.*, 485 F.3d at 462.

Courts "recognize[] two types of personal jurisdiction: 'general' (sometimes called 'all-

purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers*

*Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). "[O]nly a limited

set of affiliations with a forum will render a defendant amenable to" general jurisdiction. *Daimler*

*AG v. Bauman*, 571 U.S. 117, 137 (2014). For individual defendants, the "paradigm forum for the

exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. "A

person's domicile is her permanent home, where she resides with the intention to remain or to

12

which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). The First Amended Complaint states that Defendant resides in Spain. FAC ¶ 4. Accordingly, Plaintiffs do not argue that general jurisdiction is proper in the instant case.

Rather, Plaintiffs contend that the Court has specific jurisdiction over Defendant. Opp'n at 7–16. Specific jurisdiction is proper when a suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  Whether a court has specific jurisdiction over a nonresident defendant "focuses on the relationship among the defendant, the forum, and the litigation," and "the defendant's suit-related conduct must create a substantial connection with the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781; *see Goodyear*, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over claims *unrelated to those sales*." (emphasis added)).

For specific jurisdiction, the Ninth Circuit has adopted a three-part test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. It is the plaintiff's burden to plead allegations satisfying the first two prongs. *Id.* If the plaintiff does so, the burden shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair. *Id.* The Court now considers each element of the three-part test.

### a.  Purposeful Direction

For causes of action sounding in tort, the Court applies the purposeful direction test, rather than the purposeful availment test, which generally applies to claims arising from a contract. *See Axiom Foods*, 874 F.3d at 1069 ("Where, as here, a case sounds in tort, we employ the purposeful direction test."); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) ("We generally

United States District Court
Northern District of California

apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct."). Because the Ninth Circuit has found that trademark cases are "akin to a tort case," the Ninth Circuit applies the purposeful direction test to trademark cases. *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 509 (9th Cir. 2018); *see also, e.g.*, *Nissan Motor Co. v. Nissan Computer Corp.*, 246 F.3d 675, 675 (9th Cir. 2000) (applying purposeful direction analysis to trademark infringement lawsuit); *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1232–33 (N.D. Cal. 2014) ("For trademark infringement actions, the Ninth Circuit requires a showing of purposeful direction.").

The purposeful direction test, "often referred to as the 'effects' test, derives from the United States Supreme Court's opinion in *Calder v. Jones*, 465 U.S. 783 (1984)." *Axiom Foods*, 874 F.3d at 1069. To satisfy the purposeful direction, "[t]he defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (internal quotation marks omitted). "Failing to sufficiently plead any one of these three elements is fatal to Plaintiff's attempt to show personal jurisdiction." *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1163 (N.D. Cal. 2014) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010)); *see also Michael v. New Century Fin. Servs.*, 65 F. Supp. 3d 797, 806-07 (N.D. Cal. 2014) ("Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction."); *McGibney v. Retzlaff*, 2015 WL 3807671, at *4 (N.D. Cal. June 18, 2015) (same).

### i. Intentional Act

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *A-Z Sporting Goods*, 704 F.3d at 674; *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual, physical act in the real world.").[4] Under Ninth Circuit case law, the "threshold of what

---

[4] In 2014, the United States Supreme Court decided *Walden v. Fiore*, 571 U.S. 277 (2014), which overruled in part several Ninth Circuit cases on personal jurisdiction. Importantly, the United States Supreme Court's analysis implicated the Ninth Circuit's express aiming requirement, not

14

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

constitutes an intentional act is relatively low." *AirWair Internat'l Ltd.*, 73 F. Supp. 3d at 1233.

The Court concludes that Plaintiffs have alleged that Fernandez committed an intentional act. First, Fernandez and his attorney each sent a cease and desist letter to Folio in Napa, California, threatening to enforce the PESQUERA Mark's registration against Plaintiffs. FAC ¶ 30; Battegazzore Decl. ¶¶ 6–7, Exh. C. The Ninth Circuit has concluded that mailing a demand letter to the United States is an intentional act that can help support personal jurisdiction. *See Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (holding that mailing a demand letter to the United States is an intentional act that can help support personal jurisdiction).[5]

Second, Fernandez allegedly contacted the Ohio Division of Liquor Control to inform them that Folio was not the authorized supplier of PESQUERA wine. FAC ¶ 36. As a result, the Ohio Division of Liquor Control notified Folio it was no longer authorized to sell PESQUERA wine in Ohio. Battegazzore Decl. ¶ 10, Exh. F. This contact with the Ohio Division of Liquor Control also constitutes an intentional act on Fernandez's part.

Third, Fernandez sold his PESQUERA wine, which Plaintiffs claim infringes the PESQUERA Mark, in the United States. FAC ¶¶ 44–47. The Ninth Circuit has held that selling an allegedly infringing product is an "intentional act," even if such sales occur outside the forum. *A-Z Sporting*, 704 F.3d at 674 (holding that selling infringing footwear in Arkansas constituted an intentional act); *accord Adobe Systems Inc. v. Cardinal Camera & Video Center, Inc.*, 2015 WL 5834135, at *3 (concluding that the alleged sales of unauthorized versions of Adobe's software

---

the intentional act requirement.

[5] The Ninth Circuit has stated that "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006). However, the Ninth Circuit also clarified that "[t]his is not to say that a cease and desist letter can never be the basis for personal jurisdiction." *Id.* The Ninth Circuit explained that the letter at issue in *Yahoo!* was not an adequate basis for personal jurisdiction because "it was not abusive, tortious, or otherwise wrongful." *Id.* at 1208–09. By contrast, Plaintiffs allege that the cease and desist communications in the instant case constituted intentional interference with the contract between AFTP and Folio. FAC ¶ 76. Thus, the Court considers the communications to be one intentional act that helps support personal jurisdiction.

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    throughout the United States constituted an intentional act).

2           Fourth, Fernandez registered the PESQUERA Mark with the U.S. PTO. Courts have held

3    that a defendant's act of filing a trademark registration is an intentional act that supports personal

4    jurisdiction. *See Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, Case No. C 12-2582 CW, 2012

5    WL 2343670, at *11 (N.D. Cal. June 20, 2012) ("Kung's filing a trademark registration

6    application for the word 'UBIQUITI' in the United States . . .  is an intentional act of purposeful

7    direction . . . ."); *see also Monster Cable Prods., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001,

8    1010 (N.D. Cal. 2009) (concluding that a defendant's application with the U.S. PTO for a

9    trademark registration was a substantial contact supporting personal jurisdiction). In the instant

10   case, Fernandez registered the PESQUERA Mark with the U.S. PTO and maintained the

11   registration for over thirty years. FAC ¶¶ 19, 96. Thus, Plaintiffs have sufficiently alleged that

12   Fernandez committed an intentional act.

13                      **ii.  Express Aiming**

14          Plaintiffs must next demonstrate that Fernandez's acts were expressly aimed at the forum

15   state. "Express aiming is an ill-defined concept that we have taken to mean 'something more' than

16   'a foreign act with foreseeable effects in the forum state.'" *Pakootas v. Teck Cominco Metals, Ltd.*,

17   905 F.3d 565, 577 (9th Cir. 2018) (quoting *Bancroft*, 223 F.3d at 1087). "'[R]andom, fortuitous, or

18   attenuated contacts' are insufficient to create the requisite connection to the forum." *Mitchell v.*

19   *Berwyn Partners, Inc.*, 2018 WL 3328220, at *5 (N.D. Cal. July 6, 2018) (quoting *Morrill*, 873

20   F.3d at 1142).

21          To meet the express aiming requirement, it is not enough that a defendant causes harm to a

22   plaintiff while knowing that the plaintiff resides in the forum. *Walden*, 571 U.S. at 282, 290.

23   Indeed, courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's

24   knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070 (quoting

25   *Walden*, 571 U.S. at 289). For this reason, "mere injury to a forum resident is not a sufficient

26   connection to the forum." *Walden*, 571 U.S. at 290. "Regardless of where a plaintiff lives or

27

28
Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1  works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed

2  a contact with the forum State." *Id.*

3      In the instant case, Fernandez expressly aimed his conduct at the forum state. Specifically,

4  Fernandez and his attorney each sent cease and desist communications to Folio at its address in

5  California. FAC ¶ 30; Battegazzore Decl. ¶¶ 6–7, Exh. C. Fernandez then allegedly told the Ohio

6  Division of Liquor Control that Folio was not the authorized supplier of PESQUERA wine. FAC ¶

7  36; Battegazzore Decl. ¶ 10, Exh. F. As a result, the Ohio Division of Liquor Control notified

8  Folio it was no longer authorized to sell PESQUERA wine in Ohio. *Id.* Plaintiffs allege that these

9  actions constituted intentional interference with the contract between AFTP and Folio, a contract

10  which made Folio the exclusive distributor of PESQUERA wine and which Fernandez helped

11  negotiate as manager of AFTP. FAC ¶¶ 29, 73–84; Battegazzore Decl. ¶¶ 3, 5.

12      Looking at these contacts, the Court cannot conclude that they are "random, fortuitous, or

13  attenuated." *Morrill*, 873 F.3d at 1142. Rather, Fernandez has expressly aimed his contacts at

14  California by sending Folio cease and desist communications and attempting to interfere with

15  Folio's contract with AFTP, a contract which Fernandez himself helped negotiate. Thus,

16  Fernandez's contacts with California are not fortuitous. *See DEX Sys., Inc. v. Deutsche Post AG*,

17  727 F. App'x 276, 278 (9th Cir. 2018) ("Furthermore, that the software was located on

18  [Plaintiff's] California server was not merely a fortuitous occurrence . . . Rather, the software was

19  located on California servers pursuant to an agreement reached by the parties."). Accordingly, the

20  Court can conclude that Fernandez expressly aimed his conduct at California.

21          **iii.  Foreseeable Harm**

22      The third and final prong of the purposeful direction inquiry is whether the defendant knew

23  the brunt of the harm is likely to be suffered in the forum. *Dole Food Co.*, 303 F.3d at 1111.

24  Foreseeable harm is the third prong of the purposeful direction inquiry. "Harm suffered in the

25  forum state is a necessary element in establishing purposeful direction." *Morrill*, 873 F.3d at 1144.

26  There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the

27

28

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1    forum state. *Yahoo!*, 433 F.3d at 1207. However, "[t]he foreseeability of injury in a forum" alone

2    is not enough to confer personal jurisdiction in that forum. *Axiom Foods*, 874 F.3d at 1070.

3            In the instant case, Fernandez knew that the brunt of the harm would be suffered in

4    California. Specifically, Fernandez sent cease and desist letters to Folio at its address in California.

5    FAC ¶ 30; Battegazzore Decl. ¶¶ 6–7, Exh. C. Fernandez then allegedly told the Ohio Division of

6    Liquor Control that Folio was not the authorized supplier of PESQUERA wine. FAC ¶ 36.

7    Plaintiffs allege that these actions constituted intentional interference with the contract between

8    AFTP and Folio, which made Folio the exclusive distributor of PESQUERA wine. FAC ¶¶ 73 –

9    84. Thus, Fernandez knew that the brunt of the harm would be suffered in California, where Folio

10   is headquartered.

11           Moreover, there is a "well-established rule . . . that, when a defendant engages in tortious

12   activity toward a plaintiff in the state where that plaintiff resides, the defendant is subject to

13   personal jurisdiction there." *Morrill*, 873 F.3d at 1148. In this case, Plaintiffs allege that Fernandez

14   engaged in tortious activity toward Folio by intentionally interfering with the contract between

15   Folio and AFTP. Thus, Plaintiffs can show that the first prong of the specific jurisdiction test,

16   purposeful direction, is fulfilled in the instant case.

17           **b.  Claim Arising Out of Forum-Related Activities**

18           The second prong of the specific jurisdiction test requires that the plaintiff's claims arise

19   out of defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. To determine

20   whether the plaintiff's claims arise out of the defendant's forum-related activities, courts use a

21   traditional "but for" causation analysis. *Bancroft*, 223 F.3d at 1088. The Ninth Circuit has

22   recognized that, in trademark or copyright infringement actions, if the defendant's infringing

23   conduct harms the plaintiff in the forum, this element is satisfied. *Panavision Int'l, L.P. v.

24   Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *see also CollegeSource, Inc. v. AcademyOne, Inc.*,

25   653 F.3d 1066, 1079 (9th Cir. 2011) (trademark infringement claim "arises out of the actions of

26   [defendant]" where defendant allegedly infringed plaintiff's trademark, knowing that plaintiff was

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    located in California).

2         In the instant case, the Court can conclude that Plaintiffs' claims arise out of Fernandez's

3    forum-related activities. Fernandez's forum-related activities include sending cease and desist

4    communications to Folio in California, telling the Ohio Division of Liquor Control that Folio was

5    not an authorized supplier of PESQUERA wine, selling his own PESQUERA wine, and

6    registering a U.S. trademark. FAC ¶¶ 19, 30, 36, 44–47; Battegazzore Decl. ¶¶ 6–7, Exh. C.

7    Without these contacts, the instant case, about who is entitled to use the PESQUERA Mark within

8    the United States, would not have arisen. Thus, under a "but for" analysis, Plaintiffs' claims arise

9    out of forum-related activities.

10            **c.  Reasonableness**

11        Once a plaintiff has met its burden on the first two prongs of the specific personal

12   jurisdiction inquiry, the burden shifts to the defendant to show why the exercise of jurisdiction

13   would not be reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. Generally, a defendant must

14   "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

15   (quoting *Burger King*, 471 U.S. at 476-78).

16        In analyzing reasonableness, the Ninth Circuit considers seven factors: "(1) the extent of a

17   defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3)

18   the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in

19   adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the

20   importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the

21   existence of an alternative forum." *Id.* at 1323 (citing *Burger King*, 471 U.S. at 476-77). The Court

22   discusses each of these factors in turn.

23            **i.  Extent of Purposeful Interjection**

24        With regard to the first factor, "[e]ven if there is sufficient 'interjection' into the state to

25   satisfy the [purposeful direction prong], the degree of interjection is a factor to be weighed in

26   assessing the overall reasonableness of jurisdiction under the [reasonableness prong]." *Ins. Co. of*

27

28   Case No. 20-CV-02128-LHK
     ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

19

United States District Court
Northern District of California

1   *N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981). "The smaller the element of

2   purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its

3   exercise." *Id.*

4          In the instant case, Fernandez has purposefully interjected himself into the forum by

5   sending demand letters to Folio, communicating with the Ohio Division of Liquor Control, selling

6   an allegedly infringing product, and registering the PESQUERA Mark. FAC ¶¶ 19, 30, 36, 44, 45.

7   However, Fernandez's purposeful interjection is relatively limited. Indeed, Fernandez is a Spanish

8   citizen who previously ran a business that is registered in and has its headquarters in Spain. *Id.* ¶¶

9   2, 4. Fernandez's only connections with the United States relate to his efforts to sell his wine

10  within the United States, a task he delegates in part to U.S.-based distributors, such as Classical

11  Wines and Folio. *Id.* ¶¶ 29, 32. Accordingly, Fernandez's level of purposeful interjection is

12  relatively limited. Thus, the Court concludes that this factor weighs slightly against the exercise of

13  jurisdiction.

14          **ii.  Defendant's Burden in Litigating**

15          The second factor, the burden on the defendant, addresses the logistical challenges for a

16  defendant to litigate in the forum state. "The unique burdens placed upon one who must defend

17  oneself in a foreign legal system should have significant weight in assessing the reasonableness of

18  stretching the long arm of personal jurisdiction over national borders." *Harris Rutsky & Co. Ins.*

19  *Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2003) (quoting *Asahi Metal*

20  *Ind. v. Superior Court*, 480 U.S. 102, 114 (1987)). However, "[m]odern means of communication

21  and transportation have tended to diminish the burden of defense of a lawsuit in a distant forum."

22  *Ins. Co.*, 649 F.2d at 1271.

23          In *Insurance Co.*, the Ninth Circuit found that this factor weighed against exercising

24  jurisdiction over a Mexican defendant in Alaska because the distance between the defendant and

25  the forum was significant, transporting witnesses and evidence to the forum would be problematic,

26  and testimony and documents would need to be translated. *Id.* at 1271–72. The Ninth Circuit

27

28

20

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   acknowledged that the inconvenience burdens would be symmetrical if the case were instead

2   litigated in defendant's home forum, but the Ninth Circuit observed that "[t]he law of personal

3   jurisdiction . . . is asymmetrical. The primary concern is for the burden on a defendant. If the

4   burdens of trial are too great for a plaintiff, the plaintiff can decide not to sue or, perhaps, to sue

5   elsewhere. A defendant has no such luxury. The burdens on a defendant are of particular

6   significance if, as here, the defendant has done little to reach out to the forum state." *Id.* at 1272.

7        As in *Insurance Co.*, the instant case would impose a considerable burden on Fernandez, a

8   Spanish citizen, to defend himself in the United States court system. FAC ¶ 4. In the instant case,

9   the distance between the defendant, who resides in Spain, and the forum, in California, is even

10   more significant than the distance at issue in *Insurance Co.*, from the defendant's home in Mexico

11   to the forum in Alaska.

12        Furthermore, transporting witnesses from Spain to California and translating testimony and

13   documents from Spanish to English would be burdensome. Indeed, the dispute at the center of the

14   instant case is whether Fernandez transferred the PESQUERA Mark to AFTP at its formation in

15   1990. *Id.* ¶ 21 (alleging that, upon AFTP's incorporation, "all of the joint assets . . . of the pre-

16   existing business owned by Fernandez and Rivera were transferred to [AFTP], which . . . naturally

17   included all intellectual property, including the PESQUERA mark"); Fernandez Decl. ¶ 7

18   (asserting that AFTP's Articles of Incorporation did not list the PESQUERA Mark as being

19   contributed to AFTP). Accordingly, the central evidence at issue in the instant case involves the

20   testimony of the Fernandez-Rivera family, all of whom live in Spain, and documentary evidence

21   regarding AFTP, including AFTP's Articles of Incorporation. FAC ¶ 21 (alleging that, under

22   AFTP's Articles of Incorporation, the PESQUERA Mark was transferred); Fernandez Decl. ¶ 7

23   (alleging that AFTP's Articles of Incorporation did not transfer the PESQUERA Mark to AFTP).

24   The witnesses would need to travel from Spain to California, and the testimony and documents

25   would need to be translated from Spanish to English.

26        The instant case would impose an especially high burden because the parties have already

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

been involved in four lawsuits in Spain, three of which remain ongoing. Fernandez Decl. ¶¶ 18–22. Accordingly, litigating the instant case while also litigating the ongoing Spanish proceedings would impose an especially high burden. *See Doe v. Geller*, 533 F. Supp. 2d 996, 1008 (N.D. Cal. 2008) (concluding that the burden on British defendants of litigating in California weighed slightly against exercising jurisdiction where the parties were also engaged in a separate suit in Pennsylvania). Thus, the Court concludes that the burden of litigating weighs against the exercise of jurisdiction.

### iii. Sovereignty

The third factor, sovereignty, "concerns the extent to which the district court's exercise of jurisdiction in California would conflict with the sovereignty of [Spain], [Defendant's] state of domicile." *Panavision*, 141 F.3d at 1323. "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." *Harris Rutsky*, 328 F.3d at 1133 (quoting *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). However, this factor is not controlling. *Id*. In *Harris Rutsky*, the Ninth Circuit presumed that the United Kingdom had a particular interest in adjudicating a suit with British defendants arising out of conduct that took place in London, even where defendants presented no evidence of the United Kingdom's interest. *Id*. Similarly, the court in *Doe v. Geller* assumed that England had a sovereign interest in adjudicating a claim against a British resident. 533 F. Supp. 2d at 1008. Sovereignty is especially important where a court's decision may conflict with the decision of a foreign court. *See Rippey v. Smith*, 16 F. App'x 596, 599 (9th Cir. 2001) (concluding that, because the adjudication of a case would require an analysis of existing British litigation, "the potential for conflict with British sovereignty weighs heavily in favor of the defendants").

In the instant case, the Court's exercise of jurisdiction could conflict with the sovereignty of Spain. Indeed, the claims between the parties have resulted in four lawsuits in Spain, three of which remain ongoing. Fernandez Decl. ¶¶ 18–22. In one of these cases, AFTP has filed a

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    counterclaim that seeks a declaration that Fernandez assigned the PESQUERA Mark to AFTP in

2    1990. Fernandez Decl. ¶ 19, Exh. 9, at 288 (alleging that "the Spanish trademarks . . . along with

3    the United States trademark 'PESQUERA' (no. 1560091), *inter alia*, were the property of the

4    matrimonial joint-property enterprise composed of Mr. Alejandro Fernandez Perez and Mrs.

5    Emilia Rivera Rueda"); Diez Decl. ¶ 19. Because the Spanish court and this Court are being asked

6    to decide the same issue, the Court's exercise of jurisdiction could conflict with the sovereignty of

7    Spain. Thus, this factor weighs heavily against the exercise of jurisdiction.

### iv.  Forum State's Interest

9        Next, the Court considers the forum state's interest in adjudicating the case. "California

10   maintains a strong interest in providing an effective means of redress for its residents tortiously

11   injured." *Panavision*, 141 F.3d at 1323. One of the plaintiffs in the instant case, Folio, is a

12   California limited liability company headquartered in Napa, California. FAC ¶ 3. Furthermore,

13   Plaintiffs allege that Fernandez tortiously interfered with the contract between AFTP and Folio. *Id.*

14   ¶¶ 73–84. California thus has a strong interest in providing an effective means of redress for Folio,

15   its resident.

16       Although Folio is a plaintiff in the case, the majority of the allegations relate to Fernandez

17   and AFTP, both of which reside in Spain. Indeed, Folio is explicitly mentioned in only one out of

18   the eleven causes of action, intentional interference with contractual relations. *Id.* The other ten

19   causes of action in the First Amended Complaint center around Fernandez's alleged infringement

20   of the PESQUERA Mark. *See* FAC ¶¶ 57–72, 85–120. Folio does not even have standing to assert

21   infringement because Plaintiffs never allege that Folio is the owner or an assignee of the

22   PESQUERA Mark. *See Visa U.S.A. Inc. v. First Data Corp.*, Case No. C 02-01786 JSW, 2005

23   WL 6271242, at *3 (N.D. Cal. Aug. 16, 2005) ("Where a licensing agreement does not grant the

24   licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's

25   ownership rights, the licensee, even if exclusive, cannot enforce the mark . . . ") (quotation

26   omitted). California does not have an interest in adjudicating a dispute between a Spanish

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

company (AFTP) and a Spanish citizen (Fernandez) over which one of them owns a trademark. However, because one cause of action does mention Folio, this factor weighs very slightly in favor of the exercise of jurisdiction.

### v.  Efficient Resolution

The next factor, efficient resolution, "focuses on the location of the evidence and witnesses. It is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1324.

In the instant case, Plaintiffs argue that some evidence and witnesses are located in California, including witnesses related to Folio and witnesses who could speak to consumer confusion between AFTP's wine and Fernandez's wine. Opp'n at 20. Although the Court acknowledges that some evidence and witnesses are located in California, the dispute at the center of the instant case is whether Fernandez transferred the PESQUERA Mark to AFTP at its formation in 1990. FAC ¶ 21 (alleging that, upon AFTP's incorporation, "all of the joint assets . . . of the pre-existing business owned by Fernandez and Rivera were transferred to [AFTP], which . . . naturally included all intellectual property, including the PESQUERA mark"); Fernandez Decl. ¶ 7 (asserting that AFTP's Articles of Incorporation did not list the PESQUERA Mark as being contributed to AFTP). Accordingly, the central evidence at issue in the instant case involves the testimony of the Fernandez-Rivera family, all of whom live in Spain, and documentary evidence regarding AFTP, including AFTP's Articles of Incorporation. *Id.* The witnesses would need to travel from Spain to California, and the testimony and documents would need to be translated from Spanish to English. Thus, this factor weighs slightly against the exercise of jurisdiction.

### vi.  Convenient and Effective Relief for Plaintiff

The next factor requires the Court to consider "the plaintiff's interest in obtaining convenient and effective relief." *Ins. Co.*, 649 F.2d at 1273 (internal quotation marks omitted). However, the Ninth Circuit has cautioned that this factor should not weigh heavily in the analysis. *See Harris Rutsky*, 328 F.3d at 1133; *Panavision*, 141 F.3d at 1324.

24

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1     In the instant case, Plaintiff Folio has an interest in obtaining convenient and effective

2 relief in California, where it is headquartered. FAC ¶ 3. However, Folio is not at the center of this

3 dispute, which relates to the alleged infringement of the PESQUERA Mark. Indeed, Folio does not

4 have standing to assert the infringement of the PESQUERA Mark. *Visa*, 2005 WL 6271242, at *3.

5 Rather, Folio is implicated in only one out of the eleven causes of action brought by Plaintiffs. *See*

6 FAC ¶¶ 57–72, 85–120 (ten out of eleven causes of action, which do not mention Folio).

7 Furthermore, the Ninth Circuit has stated that this factor should not weigh heavily in the

8 reasonableness analysis. *Harris Rutsky*, 328 F.3d at 1133. For these reasons, the Court concludes

9 that this factor weighs slightly in favor of the exercise of jurisdiction.

10          **vii. Alternative Forum**

11     Finally, the Court "must determine whether an adequate alternative forum exists. The

12 plaintiff bears the burden of proving the unavailability of an alternative forum." *Harris Rutsky*,

13 328 F.3d at 1133-34.

14     In the instant case, Plaintiffs have not proved that an alternative forum is unavailable.

15 Indeed, Spain is not only an available forum, but it is also the forum that was included in AFTP's

16 Articles of Incorporation as the place where disputes between AFTP's directors would be

17 adjudicated. Fernandez Decl. ¶ 9, Exh. 2 at 028, art. 37; Diez Decl. ¶ 16. Furthermore, the

18 members of the Fernandez-Rivera family have already been involved in four lawsuits in Spain.

19 Fernandez Decl. ¶¶ 18–22. In one of those cases, AFTP filed a counterclaim that seeks a

20 declaration that Fernandez assigned the PESQUERA Mark to AFTP in 1990, which is the same

21 issue the Court is being asked to resolve here. Fernandez Decl. ¶ 19, Exh. 9, at 288; Diez Decl. ¶

22 19. Thus, Spain is an available alternative forum, and this factor weighs against the exercise of

23 jurisdiction.

24     Looking at all the factors, one factor weighs heavily against the exercise of jurisdiction

25 (sovereignty), two factors weigh against the exercise of jurisdiction (the defendant's burden in

26 litigating, and the existence of an alternative forum), and two factors weigh slightly against the

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    exercise of jurisdiction (the degree of purposeful interjection and the efficient resolution). Only

2    two factors (the forum state's interest and the plaintiff's interest in obtaining convenient and

3    effective relief) weigh slightly in favor of the exercise of jurisdiction. Evaluating these factors, the

4    Court concludes that the exercise of jurisdiction would not be reasonable in the instant case.

5         In sum, the essence of the instant case is a trademark dispute between AFTP, a Spanish

6    company, and Fernandez, a Spanish resident. The crucial issue is whether AFTP owns the

7    PESQUERA Mark or Fernandez does, and that issue centers around whether Fernandez assigned

8    the PESQUERA Mark to AFTP at its incorporation. The most important evidence in resolving that

9    issue includes the testimony of members of the Fernandez-Rivera family, who live in Spain, and

10   documentary evidence about the formation of AFTP. The witnesses would need to travel from

11   Spain to California, and the Spanish testimony and evidence would need to be translated.

12   Furthermore, Spain is an alternative forum, and AFTP's Articles of Incorporation specify that

13   disputes between AFTP and its shareholders be arbitrated in Spain. Indeed, the parties have

14   litigated four lawsuits in Spain. Three of which are ongoing, and one of which raises the exact

15   same issue raised in the instant case—whether the PESQUERA Mark belongs to AFTP or to

16   Fernandez. Thus, litigating these issues in California would present the possibility of a conflict

17   with the judgment of a court in Spain, would be burdensome for Fernandez, and would be

18   inefficient for the Spanish parties and for the Court. For these reasons, the Court concludes that

19   the exercise of jurisdiction over Fernandez would not be reasonable. Thus, the exercise of

20   jurisdiction would violate due process. *See Pebble Beach Co.*, 453 F.3d at 1155 ("If any of the

21   three [personal jurisdiction] requirements is not satisfied, jurisdiction in the forum would deprive

22   the defendant of due process of law.") (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52

23   F.3d 267, 270 (9th Cir. 1995)).

24        In addition to invoking Rule 4(k)(2), Plaintiffs also argue that Fernandez is subject to

25   personal jurisdiction in California. *See* Opp'n at 14–16. "California's long-arm statute . . . is

26   coextensive with federal due process requirements, so the jurisdictional analyses under state law

27

28

26

United States District Court
Northern District of California

1    and federal due process are the same." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218,

2    1223 (9th Cir. 2011). The Court has already concluded that exercising jurisdiction over Fernandez

3    in this forum would deprive Fernandez of due process because exercising jurisdiction over

4    Fernandez would be unreasonable. Accordingly, the Court dismisses the instant case for lack of

5    personal jurisdiction.

6        **B.  Forum Non Conveniens**

7        Although the Court dismisses the instant case for lack of personal jurisdiction, the Court

8    next addresses the forum non conveniens grounds for dismissal because it largely overlaps with

9    the personal jurisdiction discussion and provides an alternative grounds for dismissal. *See* pp. 10–

10   11, *supra*. The forum non conveniens grounds also inform the Court's decision to deny leave to

11   amend and grant the motion to dismiss with prejudice. *Id.*

12       Whether to dismiss an action for forum non conveniens is a decision "committed to the

13   sound discretion of the trial court." *Piper*, 454 U.S. at 257. The Ninth Circuit has recognized that

14   "the standard to be applied to a motion for dismissal on the ground of forum non conveniens is

15   whether . . . defendants have made a clear showing of facts which . . . establish such oppression

16   and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be

17   shown to be slight or nonexistent." *Id.* (quoting *Cheng*, 708 F.2d at 1410) (internal brackets

18   omitted). "Forum non conveniens is 'an exceptional tool to be employed sparingly, not a . . .

19   doctrine that compels plaintiffs to choose the optimal forum for their claim.'" *Id.* (internal brackets

20   omitted) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir.2000)).

21       "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum,

22   which may be overcome only when the private and public interest factors clearly point towards

23   trial in the alternative forum." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1225 (9th

24   Cir. 2011) (quoting *Piper*, 454 U.S. at 255). However, "a foreign plaintiff's choice of forum merits

25   less deference than that of a plaintiff who resides in the selected forum." *Lueck v. Sundstrand*

26   *Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001). In the instant case, one plaintiff (AFTP) is foreign,

27

28

27

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

while the other (Folio) is not. FAC ¶¶ 2, 3. Nonetheless, the Ninth Circuit has concluded that "[the United States Supreme Court's decision in] *Piper* does not in any way stand for the proposition that when both domestic and foreign plaintiffs are present, the strong presumption in favor of the domestic plaintiffs is somehow lessened." *Carijano*, 643 F.3d at 1228 (concluding that the district court had abused its discretion by applying a lesser form of deference when domestic and foreign plaintiffs were present). Accordingly, the Court does not apply a lower level of deference.

"A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir.2002) (citing *Lueck*., 236 F.3d at 1142–43). The Court discusses each of these factors in turn.

### 1. Adequate Alternative Forum

The Court first discusses whether an adequate alternative forum exists. Fernandez proposes that Spain is an adequate alternative forum. "An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano*, 643 F.3d at 1225. The Court analyzes each of these factors in turn.

First, Fernandez is amenable to process in Spain. Fernandez states that he will accept service of the instant case if filed in Spain. Fernandez Decl. ¶ 28. Furthermore, Fernandez has been party to four cases in Spain that relate to the conclusion of Fernandez's tenure as manager of AFTP. *Id.* ¶¶ 18–22. In one of the Spanish cases, AFTP raises the same issue raised in the instant case—whether Fernandez or AFTP own the PESQUERA Mark. *Id.* ¶ 19, Exh. 9, at 288; Diez Decl. ¶ 19. Thus, Fernandez is amenable to process in Spain.

Second, Spain offers a satisfactory remedy. "A 'dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to plaintiff's chance of recovery,' but an alternative forum offering a 'clearly unsatisfactory remedy' is inadequate." *Carijano*, 643 F.3d at 1225 (quoting *Piper*, 454.U.S. at 250, 254 n.22). "A foreign forum will be deemed adequate unless it offers no practical remedy for

28

United States District Court
Northern District of California

1    the plaintiff's complained of wrong." *Lueck*, 236 F.3d at 1144.

2         In the instant case, Spain offers a satisfactory remedy to Plaintiffs. Spanish law recognizes

3    causes of action for trademark infringement and other commercial torts, Spanish courts offer

4    parties a full and fair opportunity to gather evidence and present their case, and Spanish courts can

5    order monetary damages and declaratory and injunctive relief. Diez Decl. ¶¶ 24–26. Accordingly,

6    AFTP has also asked a Spanish court to conclude that Fernandez transferred the PESQUERA

7    Mark to AFTP upon AFTP's incorporation. *Id.* ¶ 19; Fernandez Decl. ¶ 19, Exh. 9 at 288.

8         Moreover, other courts have concluded that Spain is an adequate alternative forum. *See In*

9    *re Air Crash at Madrid, Spain*, 893 F. Supp. 2d 1020, 1030 (C.D. Cal. 2011) (dismissing

10   multidistrict litigation case on forum non conveniens grounds because "Spain is an available and

11   adequate alternative forum"), *aff'd sub. nom.*, *Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir.

12   2013). The Court comes to the same conclusion in the instant case.

13        **2.  Private Interest**

14        The Court next considers the private interest factors. Under Ninth Circuit precedent, "[t]he

15   factors relating to the private interests of the litigants include: '(1) the residence of the parties and

16   the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and

17   other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of

18   bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical

19   problems that make trial of a case easy, expeditious and inexpensive.'" *Carijano*, 643 F.3d at 1229

20   (quoting *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009)). The Court

21   addresses each of these factors in turn.

22        **a.  Residence of the Parties and the Witnesses**

23        The Court initially discusses the residence of the parties and the witnesses. The Ninth

24   Circuit has stated that, when deciding whether to dismiss for forum non conveniens, the analysis

25   "'should not rest on the number of witnesses . . . in each locale' but rather the court 'should

26   evaluate the materiality and importance of the anticipated . . . witnesses' testimony and then

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    determine their accessibility and convenience to the forum.'" *Boston Telecomms.*, 588 F.3d at

2    1209 (quoting *Lueck*, 236 F.3d at 1146).

3          The parties to this case include AFTP, Folio, and Fernandez. AFTP is a Spanish company,

4    and Fernandez is a citizen and resident of Spain. FAC ¶¶ 2, 4. Folio is a corporation headquartered

5    in California. *Id.* ¶ 3. However, Folio is not a central party to this dispute. Only one out of the

6    eleven causes of action explicitly mentions Folio, and the others center around alleged

7    infringement of the PESQUERA Mark. *See* FAC ¶¶ 57–72, 85–120 (ten out of eleven causes of

8    action, which do not mention Folio). Under the First Amended Complaint's allegations, Folio

9    lacks standing to assert infringement of the PESQUERA Mark. *Visa*, 2005 WL 6271242, at *3.

10   Furthermore, "[t]he presence of American plaintiffs . . . is not in and of itself sufficient to bar a

11   district court on the ground of forum non conveniens." *Boston Telecomms.*, 588 F.3d at 1201,

12   1207 (quoting *Cheng*, 708 F.2d at 1411).

13         Moreover, many witnesses in this case, including the most central witnesses, are located in

14   Spain. FAC ¶¶ 2, 4. The dispute at the heart of this case is who owns the PESQUERA Mark, and

15   specifically, whether the PESQUERA Mark was transferred to AFTP at its formation. FAC ¶ 21;

16   Fernandez Decl. ¶ 7. Accordingly, the important witnesses in this case include members of the

17   Fernandez-Rivera family, all of whom reside in Spain. Thus, many of the parties and key

18   witnesses in this case reside in Spain.

19                **b.  The Forum's Convenience to the Litigants**

20         The Court next considers the forum's convenience to the litigants. The forum is

21   inconvenient for the litigants, except Folio, which is headquartered in California. FAC ¶ 3. Indeed,

22   AFTP is headquartered in Spain, and members of the Fernandez-Rivera family, who are its

23   directors and shareholders, all reside in Spain as well. *Id.* ¶ 2. Thus, California is not a convenient

24   forum for many of the litigants, including Defendant Fernandez. This inconvenience is heightened

25   by the fact that the members of the Fernandez-Rivera family and AFTP have litigated four

26   lawsuits in Spain, three of which are ongoing. Fernandez Decl. ¶¶ 18–22. Thus, if this Court were

27

28

30

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1    to proceed, members of the Fernandez-Rivera family and AFTP would have to litigate on two

2    continents.

3    <p style="text-align:center"><strong>c.   Access to Physical Evidence and Other Sources of Proof</strong></p>

4         The Court next considers access to physical evidence and other sources of proof. The

5    central dispute in the instant case is whether Fernandez assigned the PESQUERA Mark to AFTP

6    at its formation. FAC ¶ 21; Fernandez Decl. ¶ 7. The main physical evidence will include AFTP's

7    business records, including its Articles of Incorporation, which both parties claim resolve the

8    instant case. FAC ¶ 21 (alleging that the PESQUERA Mark was transferred to AFTP "as stated in

9    the incorporation deed for the entity [AFTP]"); Fernandez Decl. ¶ 7 (asserting that AFTP's

10   Articles of Incorporation did not list the PESQUERA Mark as being contributed to AFTP). This

11   evidence is written in Spanish. Accordingly, the documents will need to be translated into English,

12   which will increase the time and costs of litigation.

13        Furthermore, as the parties stated in their joint case management statement, the parties

14   have declined to forego the provisions of the Hague Evidence Convention. ECF No. 28 at 6.

15   Accordingly, in order for Fernandez to obtain evidence from Rivera and his three oldest daughters,

16   he would have to abide by the provisions of the Hague Evidence Convention. This will further

17   increase the time and costs of litigation.

18   <p style="text-align:center"><strong>d.   Whether Unwilling Witnesses Can Be Compelled To Testify</strong></p>

19        The Court next considers whether unwilling witnesses can be compelled to testify. As the

20   Ninth Circuit has noted, "[o]ther circuits have concluded that the initial question is not whether the

21   witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown

22   that witnesses would be unwilling to testify." *Carijano*, 643 F.3d at 1231.

23        As explained above, the dispute at the heart of this case is who owns the PESQUERA

24   Mark, and specifically, whether Fernandez assigned the PESQUERA Mark to AFTP at its

25   formation. FAC ¶ 21; Fernandez Decl. ¶ 7. Thus, the most important witnesses in this case include

26   members of the Fernandez-Rivera family, all of whom reside in Spain. If Spanish witnesses are

27

28

United States District Court
Northern District of California

31

unwilling to testify, they may be beyond the reach of compulsory process in the United States. However, neither side has specifically alleged that Spanish witnesses would be unwilling to testify, so the Court does not attach much weight to this factor.

### e.  The Cost of Bringing Witnesses to Trial

The Court next considers the cost of bringing witnesses to trial. As stated above, the central dispute in this case is who owns the PESQUERA Mark, and specifically, whether Fernandez assigned the PESQUERA Mark to AFTP at its formation, so the key witnesses are members of the Fernandez-Rivera family. FAC ¶ 21; Fernandez Decl. ¶ 7. These witnesses all reside in Spain. Accordingly, the cost of bringing key witnesses to trial would be high.

### f.  The Enforceability of the Judgment

The Court then examines the enforceability of the judgment. Plaintiffs seek declaratory relief, injunctive relief, and punitive damages against Fernandez. *See* FAC at pp. 27–30. If Plaintiffs were to obtain a judgment against Fernandez in Spain, that judgment could be enforced against Fernandez in Spain, where Fernandez is a citizen and resident. *Id*. ¶ 2. By contrast, this Court could not enforce a judgment against Fernandez because this Court lacks personal jurisdiction over Fernandez. *See* pp. 11–27, *supra*.

### g.  All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

In addition to the issues raised in the discussion of the previous factors, this case would present additional practical problems. Specifically, litigation between the parties is already ongoing in Spain regarding whether AFTP or Fernandez is the rightful owner of the AFTP trademarks, including the PESQUERA Mark. Fernandez Decl. ¶ 19, Exh. 9, at 288; Diez Decl. ¶ 19. Thus, if the Court were to proceed in the instant case, the Court would have to monitor the progress of that litigation to ensure that its judgment did not conflict with that of the Spanish court.

Weighing these factors, the Court concludes that the private interests favor Spain. Spain is home to two of the three parties, and the third party (Folio) is only involved in one of eleven

32

United States District Court
Northern District of California

1  causes of action and does not have standing to assert the alleged trademark infringement that is at

2  the core of this case. The key witnesses in the case reside in Spain, and their testimony as well as

3  key documentary evidence are in Spanish and require translation. Finally, the ongoing litigation in

4  Spain would pose an additional practical obstacle to trying the instant case. Accordingly, the

5  private interests favor Spain.

6  **3.  Public Interest**

7  The Court now considers the public interest factors. The Ninth Circuit analyzes five factors

8  related to the public interest: "(1) the local interest in the lawsuit, (2) the court's familiarity with

9  the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the

10  costs of resolving a dispute unrelated to a particular forum." *Carijano*, 643 F.3d at 1232 (quoting

11  *Boston Telecomms.*, 588 F.3d at 1211).

12  **a.  The Local Interest in the Lawsuit**

13  The Court first examines the local interest in the lawsuit. California has a limited interest

14  in this lawsuit. Indeed, at its core, this is a dispute about whether a Spanish company (AFTP) or a

15  Spanish citizen (Fernandez) own a trademark. Only one cause of action, intentional interference

16  with contractual relations, mentions Folio. FAC ¶¶ 73–84. The others center around alleged

17  infringement of the PESQUERA Mark. *See* FAC ¶¶ 57–72, 85–120. Indeed, under the First

18  Amended Complaint's allegations, Folio lacks standing to assert infringement of the PESQUERA

19  Mark. *Visa*, 2005 WL 6271242, at *3. Furthermore, although the intentional interference with

20  contractual relations claim involves Folio, there is little local interest in deterring Fernandez's

21  alleged intentional interference with contractual relations. *See Guimei v. Gen. Elec. Co.*, 172 Cal.

22  App. 4th 689 (2009) (concluding, where defendants were not California-based corporations, that

23  the state "has little interest in keeping the litigation in this state to deter future wrongful conduct").

24  Thus, there is limited local interest in the lawsuit.

25  **b.  The Court's Familiarity with the Governing Law**

26  The Court now discusses its familiarity with the governing law. The PESQUERA Mark is

27

28

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

a U.S. trademark, and the Court is familiar with American trademark law. However, in order to determine whether Fernandez has infringed the PESQUERA Mark, the Court must determine who owns the PESQUERA Mark—AFTP or Fernandez. As Plaintiffs acknowledge, the PESQUERA Mark was issued in Fernandez's name in 1989. FAC ¶ 19; *see also* ECF No. 36 (U.S. PTO's registration of the PESQUERA Mark, issued to Fernandez). However, Plaintiffs allege that the PESQUERA Mark was transferred to AFTP upon its incorporation in 1990. *Id.* ¶ 21. Whether Fernandez validly transferred the PESQUERA Mark to AFTP upon its incorporation will be determined under Spanish law, not under American trademark law. *See id.* (alleging that, "[a]s established by Spanish law, and by the grant language of the [AFTP Articles of Incorporation], *all* of the joint assets and community property of the pre-existing business owned by Fernandez and Rivera were transferred to the plaintiff AFTP entity, which did not exempt, but naturally included all intellectual property"); Diez Decl. ¶¶ 13–15 (explaining requirements under Spanish law to transfer property to a company under its Articles of Incorporation and to transfer a trademark). Thus, the Court lacks familiarity with the law that will help resolve this case. Further underscoring this point, Fernandez submitted a declaration in support of his motion by a Spanish intellectual property attorney regarding Spanish law. *See* Diez Decl. ¶¶ 1, 5. It is likely that other similar declarations would be needed if the Court were to hear the instant case.

### c.  The Burden on Local Courts and Juries

The Court next examines the burden on local courts and juries of hearing the instant case. The burden on local courts and juries is also relatively high. Spanish law is implicated. *See* FAC ¶ 21; Diez Decl. ¶¶ 13–15. Testimony and documentary evidence must be translated. *See* FAC ¶ 21 (alleging that the transfer of the PESQUERA Mark was made under AFTP's Articles of Incorporation); Fernandez Decl. ¶ 7 (alleging that AFTP's Articles of Incorporation did not transfer the PESQUERA Mark). Furthermore, the Spanish courts have already expended resources presiding over four lawsuits regarding the end of Fernandez's term as manager. Fernandez Decl. ¶¶ 18–22. Thus, the burden on local courts and juries is high.

### d.  Congestion in the Court

34

1    The Court then considers congestion. The Northern District of California's dockets are

2    congested. *See Summa Res. Holdings LLC v. Carbon Energy Ltd.*, No. 15-CV-05334-TEH, 2016

3    WL 2593868, at *7 (N.D. Cal. May 5, 2016) ("It is beyond dispute that the docket of this Court is

4    heavily congested."). However, neither side presents information about congestion in the Spanish

5    courts. Thus, the Court considers this factor to be neutral.

6              **e.   The Costs of Resolving a Dispute Unrelated to a Particular Forum**

7              The Court finally analyzes the costs of resolving a dispute unrelated to a particular forum.

8    The center of this case is a dispute about whether a Spanish company (AFTP) or a Spanish citizen

9    (Fernandez) owns a trademark. FAC ¶ 21 (alleging that AFTP owns the PESQUERA Mark);

10   Fernandez Decl. ¶ 7 (alleging that Fernandez owns the PESQUERA Mark). Accordingly, this

11   dispute does not have much relation to California. Furthermore, the critical witnesses and evidence

12   would have to come from Spain and require translation. Thus, litigating this case, which is not

13   strongly related to California, would impose significant costs.

14             Weighing these factors, the Court concludes that the public interests also favor Spain. The

15   central dispute is about whether a Spanish company (AFTP) or a Spanish citizen (Fernandez)

16   owns a trademark. This dispute has little relation to California. Furthermore, adjudicating this core

17   dispute requires applying Spanish law, with which the Court is unfamiliar. In addition, the key

18   evidence and testimony must be translated. For these reasons, the Court concludes that the public

19   interests also favor Spain.

20             In conclusion, Spain is an adequate alternative forum. In fact, Spain is the forum in which

21   the parties are already litigating. Moreover, the private and public interests favor litigating in

22   Spain. The private interest favors Spain because the most important witnesses and evidence are

23   located in Spain. The public interest favors Spain because California has little interest in this

24   lawsuit and Spanish law determines the critical issue of whether the PESQUERA Mark was

25   transferred to AFTP. Weighing all of these factors, the Court dismisses the instant case for forum

26   non conveniens. Thus, the Court dismisses the instant case for lack of personal jurisdiction and for

27

28

United States District Court
Northern District of California

35

forum non conveniens.

## C.  Leave to Amend

The remaining question is whether the motion to dismiss should be granted with prejudice or leave to amend. Dismissal with prejudice is warranted when amendment would be futile, unduly prejudice the opposing party, or cause undue delay, or the moving party has acted in bad faith. *See Leadsinger*, 512 F.3d at 532.

In the instant case, the Court concludes that amendment would be futile. The Court has determined that Plaintiffs' complaint should be dismissed based on two independent grounds: lack of personal jurisdiction and forum non conveniens. Furthermore, the Court is not convinced that Plaintiffs could amend their complaint to address the personal jurisdiction and forum non conveniens defects that the Court has identified. These defects stem from fixed aspects of the case, including the residence of the parties and witnesses, the location of the evidence, and the law to be applied. Accordingly, these defects would result in the dismissal of the case even if a second amended complaint were filed. Thus, the Court concludes that amendment would be futile. *See Finsa Portafolios, S.A. DE C.V. v. OpenGate Capital, LLC*, 769 F. App'x 429, 432 (9th Cir. 2019) (affirming dismissal of complaint on forum non conveniens grounds and denial of leave to amend where "the amended complaint would have been subject to dismissal under the same *forum non conveniens* analysis as the initial complaint").

In addition, the Court concludes that amendment would unduly prejudice Fernandez and cause undue delay. Specifically, requiring Fernandez to analyze another futile complaint and litigate a second motion to dismiss would unduly prejudice Fernandez and cause undue delay in resolving the instant case. Because amendment would be futile, unduly prejudice the opposing party, and cause undue delay, the Court DENIES leave to amend. [6]

_____

[6] Plaintiffs do not explicitly argue that they are entitled to jurisdictional discovery. Plaintiffs merely state that one of the issues presented is "[w]hether Plaintiffs should be permitted to propound jurisdictional discovery to further establish Fernandez's contacts with the U.S. and/or California." Opp'n at 2. However, even if the Court were to consider this statement as a request for jurisdictional discovery, the Court would deny it. *See Bayer Healthcare LLC v. Nektar*

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Fernandez's motion to dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: January 26, 2021

_____
LUCY H. KOH
United States District Judge

_____

_Therapeutics,_ No. 17-CV-050055-LHK, 2018 WL 1258202, at *10–*11 (N.D. Cal. Mar. 12, 2018) (denying "a passing request for jurisdictional discovery" where the plaintiff "d[id] not specify what kind of information it anticipate[d] obtaining in jurisdictional discovery").

37

Case No. 20-CV-02128-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE